1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

JEFFREY W., individually, and on behalf of
R.H.W., and R.H.W.,

    Plaintiffs,

v.

PREMERA BLUE CROSS, an independent
licensee of the BLUE CROSS BLUE SHIELD
ASSOCIATION; MICROSOFT
CORPORATION; and the MICROSOFT
CORPORATION WELFARE BLUECARD
PPO PLAN,

    Defendants.

Case No.:

 Honorable

**COMPLAINT**

Plaintiffs JEFFREY W., individually, and on behalf of R.H.W., and R.H.W., through their undersigned counsel, hereby complain against Defendants, alleging in the totality and alternatively as follows:

## I.  INTRODUCTION

1.1    Plaintiff R.H.W. received three months of medical treatment at Second Nature Blue Ridge ("Blue Ridge") from September 1, 2022, through December 1, 2022. The Defendants denied payment for any of the treatment, requiring Jeffrey W. to pay approximately $63,855.00 out-of-pocket. The Defendants did not dispute that the treatment was medically necessary; however, they

MERRICK, HOFSTEDT & LINDSEY, P.S.
ATTORNEYS AT LAW
3101 WESTERN AVENUE, Suite 200
SEATTLE, WASHINGTON  98121
(206) 682-0610

denied payment on the sole ground that the treatment was provided in an outdoor ("wilderness")

setting. This litigation thus centers around that narrow issue.

## II.    PARTIES, JURISDICTION AND VENUE

2.1    Jeffrey W. and R.H.W. are, and were at all times relevant hereto, residents of Boone

Township, Watagua County, North Carolina.

2.2.    Premera Blue Cross ("Premera"), an independent licensee of the Blue Cross Blue

Shield Association, is headquartered in Mountlake Terrace, Snohomish County, Washington.

2.3    Microsoft Corporation ("Microsoft") is a for-profit corporation, headquartered in

Redmond, King County, Washington, and was, at all times relevant hereto, Jeffrey W.'s employer.

2.4    Through his employment, Jeffrey W. was at all times relevant hereto, a participant

in the Microsoft Corporation Welfare BlueCard PPO Plan ("the Plan").  R.H.W. was a minor

dependent and a beneficiary under the Plan.

2.5    The Plan is a fully insured plan under 29 U.S.C. § 1001 *et. seq.*, the Employee

Retirement Income Security Act of 1974 ("ERISA").

2.6    Microsoft Corporation is the Plan Administrator for the Plan.

2.7    Upon information and belief, Premera is the Claims Administrator for the Plan.

2.8    This lawsuit is brought to obtain an order requiring the Plan and its fiduciaries to

pay or reimburse expenses incurred during R.H.W.'s treatment at Blue Ridge.

2.9    The remedies Plaintiffs seek under ERISA and the Plan are for benefits due under

the terms of the Plan and pursuant to 29 U.S.C. § 1132(a)(1)(B); for appropriate equitable relief

under 29 U.S.C. § 1132(a)(3) based on Defendants' violation of the Mental Health Parity and

Addiction Equity Act of 2008 ("MHPAEA"); an award of pre-judgment interest; and an award of

fees and costs pursuant to 29 U.S.C. § 1132(g).

MERRICK, HOFSTEDT & LINDSEY, P.S.
ATTORNEYS AT LAW
3101 WESTERN Avenue, Suite 200
SEATTLE, WASHINGTON  98121
(206) 682-0610

2.10    This Court has jurisdiction over this case under 29 U.S.C. § 1132(e)(1) and 28 U.S.C. § 1331.

2.11    Venue is appropriate under 29 U.S.C. § 1132(e)(2) and 28 U.S.C. § 1391(c) based on ERISA's provisions regarding nationwide service of process and venue.

### III.    FACTUAL ALLEGATIONS

3.1    R.H.W. received medical care and treatment at Blue Ridge September 1, 2022, through December 1, 2022.

3.2    Blue Ridge is located in Clayton, Georgia. It is a 24/7 outdoor behavioral health treatment facility that is duly licensed by the state of Georgia to provide outdoor behavioral health services to adolescents.

3.3    R.H.W. was sixteen (16) years of age at the time of treatment.

3.4    At the time of his treatment, R.H.W. had certain medical conditions that placed him at a risk of development of more significant behaviors and disorders. The medical conditions were set forth in detail in the administrative record.[1]

3.5    R.H.W.'s medical conditions qualified as mental health and related conditions under the Plan.

3.6    Through Explanations of Benefits ("EOBs"), Premera denied payment for any of R.H.W.'s treatment at Blue Ridge.  The EOBs stated, "Our medical staff reviewed this claim and determined this service is not covered by your plan."

3.7    The EOBs did not identify any provisions of the plan or state any information about why the services were not covered by the plan.

---

[1] The administrative record, which includes the medical records and other claim documents, is comprised of hundreds of pages and is incorporated herein by reference.

COMPLAINT
Page - 3

**Plaintiffs' Level One Appeal**

3.8    Plaintiffs submitted a Level One Member Appeal.

3.9    In their first-level appeal, Plaintiffs reminded Premera that, under ERISA, the denial of a claim must contain, "in a manner calculated to be understood by the claimant – (i) The specific reason or reasons for the adverse determination; (ii) Reference to the specific plan provisions on which the determination is based; [and] (iii) A description of any additional material or information necessary for the claimant to perfect the claim and an explanation of why such information is necessary."

3.10    Because the original EOBs did not identify a plan provision, Plaintiffs obtained a copy of a document from Jeffrey W.'s employer that they believed to be the Plan.

3.11    Premera subsequently provided (with its final denial) a copy of a document titled Summary Plan Description (SPD).

3.12    The SPD states that it is a summary of the Plan. The SPD states that the actual plan is comprised of documents titled "the Microsoft Corporation Welfare Plan wrap document, the Benefits@Microsoft Program, the Microsoft Healthcare Reimbursement Plan, the Microsoft Dental and Vision Care Reimbursement Plan, the Microsoft Dependent Care Reimbursement Plan, and the insurance policies and other component plan documents incorporated in the Welfare Plan."

3.13    According to the SPD:

> The Welfare Plan together with this SPD and the other incorporated documents constitute the written instruments under which the Plan is established and maintained…. Where there is an inconsistency or ambiguity between the terms of the Welfare Plan and this SPD, the terms of the Welfare Plan control.

3.14    Premera did not send Plaintiffs a copy of the Welfare Plan.

3.15    Because the EOBs did not identify any provision of the plan, Plaintiffs reviewed the SPD to guess what language might have formed the basis of the denial.

COMPLAINT
Page - 4

MERRICK, HOFSTEDT & LINDSEY, P.S.
ATTORNEYS AT LAW
3101 WESTERN AVENUE, SUITE 200
SEATTLE, WASHINGTON  98121
(206) 682-0610

3.16    In their appeal, Plaintiffs wrote, "In my review, I found an exclusion for education or recreational therapy programs in the mental health exclusions section of my plan, which listed 'wilderness programs' as part of this exclusion. I ask that the next reviewer confirm whether or not this exclusion was utilized as your basis for denying these claims." Plaintiffs stated that the exclusion referenced was found on page 73 of the SPD.

3.17    The exclusion on page 73 of the SPD stated:

**Additional exclusions and limitations for mental health and chemical dependency**

> In addition to the plan's exclusions and limitations, the following exclusions and limitations apply to this benefit:…
>
> • Educational or recreational therapy or programs; this includes, but is not limited to, boarding schools and wilderness programs. Benefits may be provided for medically necessary treatment received in these locations if treatment is provided by an eligible provider, provided that educational or recreational therapy or programs, themselves, are not eligible providers for this purpose.

3.18    Plaintiffs wrote, "If this was the exclusion utilized as your basis for denying these claims, I ask that the next reviewer provided supporting evidence as to why the services provided at Blue Ridge are considered 'educational' or 'recreational' in nature."

3.19    Plaintiffs explained that Blue Ridge is a licensed therapeutic facility that provides medical treatment, and is not an "educational or recreational therapy or program[]". Plaintiffs noted that the treatment at Blue Ridge is not centered around academic education or recreation. Plaintiffs noted that the therapeutic services received were provided by a team of licensed clinical professionals, not teachers.

3.20    Plaintiffs explained that Blue Ridge is an outdoor behavioral health treatment facility licensed by the state of Georgia to provide this type of treatment to adolescents.

MERRICK, HOFSTEDT & LINDSEY, P.S.
ATTORNEYS AT LAW
3101 WESTERN AVENUE, SUITE 200
SEATTLE, WASHINGTON  98121
(206) 682-0610

3.21    Plaintiffs explained that the plan covered mental health services for medically necessary treatment furnished by an eligible provider, and Blue Ridge met the plan's definition of eligible provider.  The plan's definition of eligible provider is: "A health care practitioner or facility that is in a licensed or certified provider category regulated by the state in which the practitioner or facility provides care, and that practices within the scope of such licensure or certification. Also included is an employee or agent of such practitioner or facility, acting in the course of and within the scope of his or her employment."

3.22    Plaintiffs asked that their appeal be reviewed by a medical or vocational expert knowledgeable about generally accepted standards and clinical best practices for outdoor behavioral health programs in the state of Georgia. Plaintiffs further asked that the appeal be reviewed by a person board certified in child and adolescent psychiatry with experience treating adolescents with adverse reactions to severe stress, generalized anxiety disorder, cannabis abuse disorder, alcohol dependence disorder, and other high risk behaviors in an intermediate outdoor behavioral health setting. "To have this case reviewed by individuals not working in this industry or familiar with this level of care creates an inherent risk that the reviewer will be incapable of performing an accurate and fair assessment," Plaintiffs argued.

3.23    Plaintiffs' appeal asked that, if the assigned reviewer did not have the relevant experience, they contact Michael Gass, PhD, at the University of New Hampshire, an expert in this type of treatment, to gain a better understanding. Plaintiffs included contact information and stated that Dr. Gass had offered to make himself available.

**Denial Letter**

3.24    On behalf of the plan and plan administrator, Premera mailed to Plaintiffs a Denial Letter dated January 10, 2024.

MERRICK, HOFSTEDT & LINDSEY, P.S.
ATTORNEYS AT LAW
3101 WESTERN Avenue, Suite 200
SEATTLE, WASHINGTON  98121
(206) 682-0610

3.25    The Denial Letter stated:

**Your appeal was denied**

Why was the appeal denied?
This decision was made on the plan language, which states Wilderness therapy is not covered. This decision is not based on medical necessity, nor is it intended as a judgment on [R's] treatment plan.

    *   *   *

An appeals specialist who is experienced in reviewing health plan appeals reviewed the following:
- Benefits and exclusions of Health Savings Plan (Premera). Booklet information can be found under Additional Details.
- Claim history
- Call history

3.26    The Denial Letter did not cite to a provision of the plan.

3.27    The Denial Letter quoted an exclusion that appears to be worded the same as that on page 72 of the SPD referenced in Plaintiffs' first-level appeal. However, the Denial Letter did not identify the source or location of the quoted language.

3.28    The Denial Letter quoted another exclusion that appears to be identically worded. The Denial Letter did not state the source or location of this exclusion.

3.29    Upon information and belief, which includes counsel's extensive experience reviewing denial letters from health insurers, the reviewer did not have medical credentials. Upon further information and belief, the reviewer did not have expertise or experience with the type of treatment or facility at issue here.

3.30    Upon information and belief – evidenced by the lack of reference to Blue Ridge's license, Georgia's regulations, Blue Ridge's website, or any of the medical records prepared by Blue Ridge – the reviewer did not consider this information with regard to whether Blue Ridge was an educational or recreational facility.

MERRICK, HOFSTEDT & LINDSEY, P.S.
ATTORNEYS AT LAW
3101 WESTERN AVENUE, SUITE 200
SEATTLE, WASHINGTON 98121
(206) 682-0610

3.31    The reviewer did not address or engage with any of the arguments contained in Plaintiffs' appeal.

3.32    From Plaintiffs' review of the SPD, the educational/recreational (wilderness) exclusion applies expressly and solely to mental health and substance abuse treatment. It is located under a heading that expressly applies to "mental health and chemical dependency."

3.33    The exclusion states that it is "in addition to" the general exclusions that would presumably apply to non-mental health/non-chemical dependency treatment. Stated differently, the educational/recreational (wilderness) exclusion does not appear to apply to analogues under the Mental Health Parity and Addiction Equity Act (MHPAEA) such as skilled nursing, hospice care, inpatient rehab and other subacute inpatient care.

3.34    At Plaintiffs' request, Premera provided what it characterized as a "parity analysis" under MHPAEA. This document did not include any citation to plan provisions, plan language, exclusion language, or any other means to evaluate the plan's compliance with MHPAEA.

3.35    R.H.W.'s treatment at Blue Ridge was very effective. He is now living a happy and successful life.

3.36    Plaintiffs have exhausted their administrative remedies under the plan.

## IV.    FIRST CAUSE OF ACTION
### (Claim for Recovery of Benefits Under 29 U.S.C. § 1132(a)(1)(B))

4.1    All allegations of this Complaint are incorporated here as though fully set forth herein.

4.2    ERISA imposes higher-than-marketplace quality standards on insurers and plan administrators. It sets forth a special standard of care upon plan fiduciaries such as, acting as agent of the Plan, to "discharge [its] duties in respect to claims processing solely in the interests of the participants and beneficiaries" of the Plan. 29 U.S.C. § 1104(a)(1).

MERRICK, HOFSTEDT & LINDSEY, P.S.
ATTORNEYS AT LAW
3101 WESTERN AVENUE, Suite 200
SEATTLE, WASHINGTON 98121
(206) 682-0610

4.3     Premera/the Plan wrongly denied coverage for R.H.W.'s treatment in violation of the terms of the Plan.

4.4     Premera/the Plan denied coverage in reliance upon an exclusion that, on its face and under the administrative record, does not apply.

4.5     ERISA underscores the particular importance of accurate claims processing and evaluation by requiring that administrators provide a "full and fair review" of claim denials and to engage in a meaningful dialogue with Jeffrey W. and R.H.W. in the pre-litigation appeal process.

4.6     On its face, the Denial Letter establishes the absence of a full and fair review of Plaintiffs' claim. Among other things, Premera/the Plan did not engage with or respond to the evidence presented in the appeal, and did not meaningfully address the arguments or concerns raised, and did not involve disinterested and qualified personnel in the review.

4.7     Premera/the Plan breached their fiduciary duties to Jeffrey W. and R.H.W. when they failed to comply with their obligations under 29 U.S.C. § 1104 and 29 U.S.C. § 1133 to act solely in R.H.W.'s interest and for the exclusive purpose of providing benefits to ERISA participants and beneficiaries, to produce copies of relevant documents and information to claimants upon request, and to provide a full and fair review of R.H.W.'s claims.

4.8     The actions of Premera and the Plan in denying payment for R.H.W.'s treatment are a violation of the terms of the Plan, as written and/or as reformed as required or permitted under ERISA.

## V.     SECOND CAUSE OF ACTION
### (Violation of MHPAEA Under 29 U.S.C. § 1132(a)(3))

5.1     All allegations of this Complaint are incorporated here as though fully set forth herein.

MERRICK, HOFSTEDT & LINDSEY, P.S.
ATTORNEYS AT LAW
3101 WESTERN AVENUE, SUITE 200
SEATTLE, WASHINGTON 98121
(206) 682-0610

1

2

5.2    MHPAEA is incorporated into ERISA and is enforceable by ERISA participants and beneficiaries as a requirement of both ERISA and MHPAEA. The obligation to comply with both ERISA and MHPAEA is part of Premera/the Plan's fiduciary duties.

3

4

5.3    Generally speaking, MHPAEA requires ERISA plans to provide no less generous coverage for treatment of mental health and substance use disorders than they provide for treatment of medical/surgical disorders.

5

6

7

5.4    MHPAEA prohibits ERISA plans from imposing treatment limitations on mental health or substance use disorder benefits that are more restrictive than treatment limitations applied to substantially all medical/surgical benefits and makes illegal separate treatment limitations that are applicable only to mental health or substance use disorder benefits. 29 U.S.C. § 1185a(a)(3)(A)(ii).

8

9

10

11

12

13

5.5    Impermissible non-quantitative treatment limitations (NQTLs) under MHPAEA include, but are not limited to, restrictions based on geographic location, facility type, provider specialty, or other criteria that limit the scope or duration of benefits for mental health or substance use disorder treatment. 29 C.F.R. § 2590.712(c)(4)(ii).

14

15

16

17

5.6    The "parity analysis" provided by Premera recognizes that inpatient hospital, inpatient physical "med and rehab", skilled nursing facility, and inpatient hospice are medical/surgical benefits analogous under MHPAEA to the inpatient treatment at issue here. None of these medical/surgical treatments have exclusions based on geographic location, facility type, or provider specialty, as defendants seek to invoke for R.H.W.'s mental health treatment.

18

19

20

21

22

23

5.7    The plan, as written or in operation, use processes, strategies, standards, and other factors to limit coverage for mental health or substance use disorder treatment in a way that is

24

25

26

27

COMPLAINT
Page - 10

inconsistent with, and more stringently applied to, the processes, strategies, standards, or other factors used to limit coverage for medical/surgical treatment in the same classification.

5.8    The violations of MHPAEA by Defendants are breaches of fiduciary duty and give Plaintiffs the right to obtain appropriate equitable remedies as provided under 29 U.S.C. § 1132(a)(3) including, but not limited to:

(a)    A declaration that the action of Defendants violate MHPAEA;

(b)    An injunction ordering Defendants to cease violating MHPAEA and requiring compliance with the statute;

(c)    An Order reforming the terms of the Plan to eliminate the unlawful exclusion claimed by defendants and to ensure compliance with MHPAEA;

(d)    An Order requiring disgorgement of funds obtained or retained by Defendants as a result of their violations of MHPAEA;

(e)    An Order requiring an accounting by Defendants of the funds wrongly withheld by each Defendant from participants and beneficiaries of the plan as a result of Defendants' violations of MHPAEA;

(f)    An Order based on the equitable remedy of surcharge requiring Defendants to provide payment to Plaintiffs as make-whole relief for their loss;

(g)    An Order equitably estopping Defendants from denying Plaintiffs' claims in violation of MHPAEA; and

(h)    An Order providing restitution from Defendants to Plaintiffs for their loss arising out of Defendants' violations of the MHPAEA and unjust enrichment.

5.9    In addition, Plaintiffs are entitled to an award of pre-judgment interest pursuant to U.C.A. § 15-1-1, and attorney fees and costs pursuant to 29 U.S.C. § 1132(g).

MERRICK, HOFSTEDT & LINDSEY, P.S.
ATTORNEYS AT LAW
3101 WESTERN AVENUE, SUITE 200
SEATTLE, WASHINGTON  98121
(206) 682-0610

## VI.    RELIEF REQUESTED

WHEREFORE, Plaintiffs seek relief as follows:

1.  Judgment in the total amount that is owed for R.H.W.'s treatment at Blue Ridge;

2.  Pre- and post-judgment interest to the date of payment;

3.  Appropriate equitable relief under 29 U.S.C. § 1132(a)(3) as outlined above;

4.  Recoverable fees and costs incurred pursuant to 29 U.S.C. § 1132(g); and

5.  For such further relief as the Court deems just and proper.

DATED this 9th day of January, 2025.

                              MERRICK, HOFSTEDT & LINDSEY, P.S.

                              */s/ Tamara Nelson*
                              Tamara K. Nelson, WSBA #27679
                              tnelson@mhlseattle.com
                              3101 Western Avenue, Suite 200
                              Seattle, Washington 98121
                              T: (206) 682-0610 / F: (206) 467-2689

                              *Counsel for Plaintiffs*

MERRICK, HOFSTEDT & LINDSEY, P.S.
ATTORNEYS AT LAW
3101 WESTERN AVENUE, SUITE 200
SEATTLE, WASHINGTON 98121
(206) 682-0610